May it please the Court, Alex Hemmer for Petitioner George Millan. I'd like to reserve four minutes and I'll keep an eye on the clock. Millan was brought to the United States as an infant and has lived here his entire life. By the time he turned 18 he had an approved visa petition that he could have used to obtain legal status. Instead he was placed into removal proceedings and the immigration judge there failed to tell him that he might be eligible for a form of immigration relief that would have allowed him to preserve his path to citizenship. Today Millan reasonably fears returning to Mexico, his country of origin, where members of a drug cartel attacked four of his immediate relatives over the span of three years, killing three of them. At his asylum hearing, Millan introduced affidavits of two family members attesting to these attacks, one of whom was a firsthand witness. The IJ and BIA found Millan's account credible but they concluded that his subjective fear of persecution was not objectively reasonable. That is incorrect and the Millan's cat claim and his two motions to reopen. I'll begin with the asylum and cat claims. First, as to asylum, the BIA and IJ erred in concluding that Millan's testimony, which the agency deemed credible, did not give rise to an objectively reasonable fear of future persecution. This court has explained that this part of the inquiry is not meant to be especially demanding if the evidence establishes that there is even a 10% chance of persecution for whatever reason that's sufficient. The BIA and IJ rejected the notion that the evidence had established as much out of what seemed to be a sense that Millan was not telling the truth. His testimony was the linchpin of his case. The IJ said as much during the hearing and the BIA echoed that theme during in its opinion but the agency is not permitted to doubt the veracity of testimony that it has accepted as credible. This court held that in the Njugna case which we cite in the reply brief and that's exactly what it did here. Second, as to cat, we think the IJ's analysis which the BIA adopted is wrong on multiple grounds. The IJ didn't ask the first and most important question under cat which is whether the applicant would be tortured if he's returned to his country of origin. More likely than not that's the standard, correct? That is, Judge Hawkins. As to the question whether Millan had shown that the government would acquiesce in any such torture, the IJ referred primarily to statistics that do not speak to that question at all. As to Millan's more recent motion to reopen which alleged ineffective assistance of counsel on the part of his asylum attorneys, we think the BIA really only adjudicated one question, whether Millan showed that any effective assistance he received was on the lawn that he is not required to meet. This court has repeatedly held that if an attorney error results in the forfeiture of an entire proceeding, prejudice is presumed. That's exactly what happened here. Millan's attorney's errors cost him a hearing on whether he was removable as charged. Help me out with the persecution and protected ground. What's the protected ground? The protected ground that he asserted in his credible fear interview and before the IJ was his family, members of the Millan family. And what evidence do we have that they're being targeted as family members instead of being targeted because of individual actions? So just to remind the court, the question of nexus and the propriety of the particular social group that Millan asserted are not before the court. The only question before the court is whether Millan's testimony gave rise to an objective fear for future persecution. But the evidence is that Millan introduced three sworn affidavits, his own and the affidavits of his grandfather. Let me stop you for a minute. Objective fear of persecution, but the definition of persecution includes on a protected ground. I'm trying to figure out what the protected ground is. Sure. And the protected ground here is his family, Judge Fletcher. I do think that we know that the question of the reasonableness of the fear and the propriety of the protected ground and the relationship between them, those are different questions. We know that because the BIA said the IJ reached all of those questions. We're not going to reach the latter two. We're only going to reach the question of whether this evidence, taken as true, gives rise to an objectively reasonable fear of future persecution. But I'm happy to answer the... A reasonable fear of bad things happening to me. Exactly. Exactly. For whatever reason. Even to one side, the question of whether it constitutes persecution because of a protected ground. That's exactly right. So if the panel concluded that, you know, the evidence before the BIA was sufficient to give rise to an objective fear of future persecution, which this Court has defined as, you know, a 10 percent chance that the Petitioner will be persecuted on his return to his home country, it would remand the case to the BIA, and the BIA would presumably then take up the question that you're asking, Judge Fletcher, which is whether the particular social ground asserted is, you know, an appropriate one, and whether the fear was...the feared persecution would be as a result of that ground. The IJ...I'm sorry. The IJ made a specific finding that your client testified that his grandfather, grandmother, five or six aunts and uncles, and numerous cousins still reside there and still reside in Mexico with safety. That's true. It's a factual finding. Yes. And that that was part of their basis for finding that he had not shown a well-founded fear. Yes, that's correct, Judge Bennett. Two points. I mean, I think first I emphasize what this Court has said in Wakari, which is that the question isn't whether Milan has shown that it's more likely than not that he'll be persecuted on return to Mexico. It's whether he's shown that there's a 1 in 10 chance that he'll be returned... persecuted on his return to Mexico. He introduced evidence here that four members of his family have been attacked and tortured by members of a drug cartel over the course of three years. What do we know about those four members? What I'm driving at is, well, it may very well be that the cartel's not killing grandmothers and little kids. Right. Tell me about the four who were killed. Are they males? Are they...you know, what are the ages and so on? That's exactly right. So the record is a little thin here. We do know that all four family members are men. This is his grandfather, his uncle, and two cousins. So the first incident in 2011, the testimony is that two male relatives were abducted, tortured, and killed by the cartel in a hotel in Guerrero. And then in 2013, two years later, the same cartel returns to Milan's grandfather's ranch, I think it is, and they torture his cousin and shoot him 18 times. So we know all four members are male. One of them, Edgar, the family member who was shot in the more recent incident, was roughly Milan's age and, like Milan, had spent most of his life in America. The testimony is that Edgar had spent at least a decade living in Southern California and was visible, was sort of uniquely visible to members of the cartel when he returned to Guerrero. That's exactly what Milan testified before the IJ was his fear. He said, you know, I'm a member of this family for whom, you know, against whom this cartel has been active, and I would be uniquely visible upon my return to Mexico because I do not speak Spanish. I have lived my entire life in the United States. And I would be, you know, noticeable as a returnee from the United States. So, you know, I think that, to go back to your first question, Judge Fletcher, although the particular social group here is the Milan family, we do have evidence that, you know, within that family, the people who are targeted are men, perhaps for the reason that you're suggesting. You know, they don't go after the grandparents. They don't go after the... Did he make that allegation below that the particular social group was men? The particular social group that he alleged is his family, Judge Bennett. I'm trying to, I think what I'm trying to get at is the question of why, within that particular social group, some members of, you know, some members were persecuted and some members have not been. There's no requirement, of course, that every member of the particular social group be, you know, be the target of violence. That's exactly what the, you know, the sort of 10% standard is trying to get at. But wasn't his argument below that the social group was recent deportees who are unable to fluently speak Spanish? No, Judge Bennett. His attorneys before the IJ asserted two particular social groups, two discrete theories under which he was eligible for asylum. One was that he was a member of the Millan family and one was that he would be, and one was that he was a, you know, a recent deportee who had been Americanized. I think that sort of, you know, it is an artificial separation of what Millan said during his interviewing officers was the social group that I'm a part of is my family, but I would be a uniquely visible member of that family because I recently returned from the United States, do not speak Mexico, do not speak Spanish, excuse me, all of which were also true of his cousin, Edgar, who was shot and tortured by members of the cartel in 2013. So that's the sort of basis for the claim. And again, the only question before the court is whether someone who has faced those experiences is, you know, has an objectively reasonable fear of future persecution for whatever reason. And the BIA's reasoning on this point is somewhat sparse. It focuses on the fact that, you know, he didn't introduce sufficient evidence, he didn't remember, don't know the answer to certain questions, but those aren't really grounds on which to conclude that, you know, credible testimony does not give rise to an objective fear, objectively reasonable fear of future persecution. Well, the IJ said that there were two grounds he alleged. The first one was not speaking Spanish. The second one is the family relationship. And what the IJ found was while a family group may constitute a particular social group under the act, the respondent has not met his burden to demonstrate a nexus to this protected group because the evidence was, as you've described it, I can't remember if you said thin or particularly thin, it was virtually non-existent, wasn't it? Well, it was primarily comprised, Judge Bennett, of his testimony and the affidavits of two family members that he put before the IJ. On the other hand, there is no contrary evidence in the record. And as this court held explicitly in Najukno, where an IJ makes a positive credibility finding, the IJ, the BIA, and this court are required to treat the underlying facts as true. But the IJ said neither the respondent nor the affidavit submitted established a nexus. Indeed, respondent testified that he is unaware of why the cartels came after Edgar and does not know details surrounding the other family member's harm. Now, even if I agreed with you that this was thin rather than non-existent, why isn't that the end of the matter? For the reason that everything you just read goes to nexus and the BIA did not adjudicate the nexus question. It said the IJ reached the issue of his credibility, the issue of whether the evidence that he put forward gave rise to an objectively reasonable fear, and the issue of nexus. We're only going to address the objective reasonableness of the fear. If I could reserve the remaining three minutes. Okay. Thanks. May it please the Court, Victor Lawrence on behalf of the Attorney General. This Court should deny these consolidated petitions for review. I think Judge Bennett hit on an important point as far as what my opponent categorized as the thinness of the evidence when it comes to the objectively reasonable fear. Of course, the Court's reviewing standard in this case is substantial evidence. You have to show that the record compels a contrary result. I'm talking about the first petition now with respect to asylum withholding and Convention Against Torture Relief protection. So, particularly when my opponent admits that the record's thin on these particular issues to compel a contrary result, this Court could end its inquiry there and determine that the Board's decision was based on substantial evidence and that there hasn't been evidence shown that compels a contrary result. Let me ask you this. Do you agree with your adversary that the question with respect to persecution, the only question decided by the BIA, was whether the harm rose to the required level? So I agree with my opponent. I think the answer is yes, but I want to make sure we're on the same page. I agree that the nexus issue was not decided. So the question, there was no past persecution in this case. We all agree on that. He hasn't been persecuted in the past. So we're looking at whether there's a well-founded fear of future persecution. The Board's decision determined that there was not an objectively reasonable fear. With respect to harm? With respect to harm. Correct. But didn't reach the question as to whether or not, if there had been sufficient harm, there was a protected ground? Correct, because it didn't feel it needed to reach that issue. So that question, if we find that there was sufficient harm, or likelihood of harm, we remand. If we disagree with the BIA, and find that there is sufficient likelihood of harm, and that the BIA's decision is not supported by substantial evidence, we remand. More accurately said, if you agree that the record compels a contrary result to the Board, then yes, we would remand on the nexus issue. That's exactly what I meant to say. Thank you. So, but, Your Honor, I urge the Court not to do that, because the BIA did, in fact, rely on objective evidence, or specific evidence, to determine that there was not an objectively reasonable fear. And that evidence was? That goes to the issue of the additional family members who reside in Mexico who have not suffered harm. So, from my own analysis that I would, in fact, impose upon the BIA, I'm going to put to one side grandmothers and little kids. Well, this is inventing facts that are not in evidence. No offense, of course, Your Honor. No, that's not true at all. That is to say that I think it's not supportable ground for the BIA to say, well, you've got family members who are living in Mexico who have not yet been killed, and on the list of family members that the BIA is relying on for that proposition to support its conclusion, we have people who would not ordinarily be targets of the cartel. But where are you getting that, if I may, Your Honor, where are you getting this idea that women, grandchildren, and kids would not be particular targets of the cartel? I don't see anything in the record to suggest that. So, I think, I think the... Well, maybe I'm wrong to do this, but you're fighting common sense. I mean, it just strikes me as reason. I've seen an awful lot of these cases. The killings, they don't kill little kids. Well, Your Honor, I'm not sure that it's fair for the court to take judicial notice of that particular point, and I don't think there's anything in the record upon which the court can draw that conclusion. I understand your common sense approach, but I don't think that it would be fair in this case to rely on evidence that's not in the record for that particular proposition. Would it be fair, excuse me, I didn't mean to interrupt you. No, no, that's all right. Would it be fair to say that the IJ focused primarily on evidence or the lack thereof with respect to past persecution? No, I disagree with that, Your Honor. I mean, certainly, in the asylum and withholding analysis, you have to look at whether there was past persecution, and there's no dispute here that there wasn't on either of the four or during his infancy, there was no past persecution. But they did also look at whether or not he had an objectively reasonable fear. And that's what the board is relying on in saying that there's substantial evidence in the record to support that. And this court has said when family members remain in the state, in the country, who have not been persecuted, that that is a sign that refutes or goes against this idea that there's an objectively reasonable fear. So, and I don't know of any opinions by this court. And I didn't research this issue because I didn't know it was going to come up today because it wasn't in the proceedings below. But I don't know of any issue where, any case of this court where it says exclude grandmothers and little kids. Now, the appellate review rules with respect to immigration are different in many ways from traditional civil cases, for example, where we can affirm the holding below based on evidence that's in the record. But if we had concerns in the immigration context about proof of nexus, should we remand? If we wanted the BIA to address the issue based on the record presented to the IJ, what the proof of nexus is? No, Your Honor. Simply because nexus was not a decision in the, if, as I said in response to Judge Fletcher, you find that the record compels a contrary result on objectively reasonable fear, then yes, the remand would also consider whether or not there was sufficient nexus to a protected ground. Our position on behalf of the government is that the court doesn't need to go there because there is not, was not an objectively reasonable fear. And I point out, by the way, that in the original petition, which of course I acknowledge was pro se, the alien did not raise this in his initial briefs. He only concentrated on the cat claim and kind of waived his claim to asylum and withholding a removal. I understand this court's jurisprudence on waiver, but I set that forth that's just so the court is on knowledge that the petitioner himself did not raise that. And we see that the petitioner has written some pretty comprehensive briefs on immigration law. He understands English well. And that was something he determined not to go forward with. He only went forward with the cat claim. You know, this may be an unfair question, but put yourself in the position of Mr. Milan. You have four male relatives who have been killed by the cartel. You're going to be sent back to Mexico. Do you have any fears for your own safety? No, considering the fact that... I would be terrified. Maybe I'm a coward. Your Honor, if you were to... Again, you're inserting yourself into a position, but if I were to insert myself... That's why I preface this by it may be unfair and so on, but... Well, but if I were to insert myself in that position and I knew that I was an innocent person who was not involved in drugs or moving drugs for the cartel and was going to live an honest life in Mexico, I would not have an objectively reasonable fear if you're asking me to adopt that position of a person in his shoes. So I think it was reasonable for the court to say, look, you know, based on the evidence before us, the thin record as my opponent has conceded, there's not enough here to show that just because a few of your family members have been killed in Mexico, that that's enough to say that you have an objectively reasonable fear when at the same time there are numerous other relatives that you have that have not suffered any harm. Do you disagree with Mr. Hammer's characterization of our case law as saying a 10% chance is enough? I acknowledge that that phrase of a 10% chance has been part of this court's jurisprudence. I don't know if that's a distinct... Rather grudging way of saying yes. Perhaps. But I would still say that he has not shown a 10% chance of an objectively reasonable fear. So what if, and I'm making these numbers up, but what if 15% of his family members had been killed? Does that qualify as 10% likelihood that he will be? In my mind, the statistics, that doesn't mathematically equate, Your Honor. Because 15% is less than 10? I mean, why doesn't it equate? Well, because the number of people in his family who may have suffered harm doesn't necessarily... If he had 50 relatives who didn't suffer harm and three who... Well, okay, so you're saying 15% of the... That's what I'm asking. I still politely and respectfully reject an analogy because number one, I don't think he's shown a 10% chance, but number two, I was asked this question in the moot in my office, interestingly enough, how many people does it take for you to say that there's an objectively reasonable fear? How many people does it take for harm? Well, of course, the answer's not there. But the issue is, does the record compel an opposite result? Here, the immigration judge and the board reasonably listened to this evidence and determined, we don't feel that you've shown an objectively reasonable fear. But what is there in the record that compels the opposite result? And I think that's where the court has to look at the standard, specifically, because as the court knows, you can't replace yourself with the board in the first instance. You have to look at it on review and whether the record compels an opposite result. And we submit that it does not. Is the court interested in the motions to reopen? I could address those as well. No, I'm much more interested in just the substance. Okay. Well, so with respect to the substance, I would also say that he has not shown that he merits relief under the Convention Against Torture. He has the burden of proving eligibility to show that it's more likely than not that he would suffer torture. And he has not shown that. I can do math. 50 is more than 10. 50 is more than 10. And if your personal opinion is 15%, he clearly doesn't meet the 50. That was hypothetical. I know it was. But I recognize that if we're talking more likely than not for cat, that's a higher threshold of the likelihood of harm. But I would urge this court to consider the fact that the board reasonably relied on the evidence in the record. There were substantial evidence in the record to show that family members remained safe in Mexico. There was no argument until the briefs about this idea of similarly situated that this cousin Edgar was in the United States before he came back and look what happened to him. That was not made specifically in the record below. That's the subject of his effort to reopen, I think, right? The subject of? That's the subject of his attempt to reopen, right? He's saying there's changed circumstances, there's new evidence, et cetera. Well, but he's also saying that because of what happened to Edgar, that he has an objectively reasonable fear. And he kind of merged the social groups that he's talking about to say, look, he's similarly situated, he was also from the United States and came back to Mexico. This court has said on several occasions that you can't reframe the social group on appeal. You have to look at what was presented at the agency. Now, of course, the social group is not, we're not looking at nexus here, but we're looking at objectively reasonable fear. And again, when you really focus on the standard, Your Honor, of does the record compel an opposite result, and we have, I don't want to say it too many times, but my opponent says the record's thin on that point. Well, the record is what it is. Sure. You could read the record as well. Is it relevant that on the multiple times that he was returned to Mexico that he didn't suffer any harm on his sojourns in Mexico? It is relevant. And that, of course, was part of the board's analysis with respect to past persecution. But that also goes to the objectively reasonable fear as well, to future persecution, because the agency has acknowledged that, look, this guy's been deported four times before to Mexico, and he's never suffered harm. How long has he stayed? I should know this, but I don't. Each time that he was sent to Mexico. There were several times where he only stayed a few days before illegally crossing again. There was one time where... The longest stay. The longest. The record is not clear on this, but between 2010 and 2013, it's unclear when he entered the country again. So I think he was deported once in 2010, and then he was deported in 2013. I don't know how long. We don't know when he came back. Correct. I'm not familiar with that fact. I don't believe it's in the record, but it may be. So in any event, if the court is really focusing on the first petition and whether or not the board got it right with the objectively reasonable fear, I suggest to the court that they did rely on substantial evidence, the living relatives in Mexico, the fact that he hadn't been persecuted in the past, and that he really didn't show specific evidence that he was likely to be the subject of harm. And on that, Your Honor, I think you have enough to deny these petitions for review. Thank you. Thank you. Thank you very much. You've saved some time. Your Honors, let me start with the last question. I'm not finding it in the record, but he's never, Milan has never spent more than about 10 days in Mexico on any of his returns, and he's never returned to Guerrero, which is the state that his family members live in. He's only crossed the border briefly to Tijuana and then come back. So I think the fact that he didn't, you know, face any harm there is really not a candidate. Is that where all the killings took place? Guerrero, yes. And did he testify that he has to return to Guerrero? So that goes to whether he'd be able to internally relocate Judge Bennett, which is also not an issue addressed by the agency. No, but did he testify that he would be going back to Guerrero? Yes, he did. On the point about Edgar, his cousin, so this is not a point that's, you know, that was briefed for the first time before this court. There's testimony before the IJ at page 1AR145. This is on direct from Milan's attorney. There's a long line of questioning about the similarities between Edgar and Mr. Milan designed to establish exactly this point, which is that Milan, like Edgar, would be uniquely visible upon his return to Mexico. So this is not some ad hoc issue that was waived. This is rough math, obviously. I will point out for the record that on AR1, AR142, Milan is asked how many uncles and cousins are still living in Guerrero, how many people of the kind of, you know, your age who might be targets of the gang, and he says five or six. So what was before the IJ and the BIA is a record in which four male members of Milan's immediate family were attacked, tortured, and three killed by the members of the drug cartel, and five or six who remain still in Mexico. So, you know, I don't want to stand here and say, well, four have been attacked and five remain. That's a 40% chance or something like that, but I do think that is relevant, and if the question the court is asking is, does the record compel the conclusion, that to your question, Judge Fletcher, it is reasonable for a person who has had four members of his immediate family attacked, tortured, and killed to fear that he'll meet the same fate. I think the record unequivocally does. To this point about a thin record, if the court is concerned about the thinness of the record, I would point out that Milan's second motion to reopen alleges ineffective assistance of counsel on the part of his asylum attorneys, who, I will reiterate, appeared at none of his first three hearings, including his credible fear hearing, and conceded the new charges of removability without consulting him. So I think the court can look to them for the thinness of that record. We would ask that the court grant the petitions, vacate the decisions below, and remand to the agency. Okay, thank you. The case of Milan-Rodriguez v. Barr is submitted for decision. We thank counsel for their argument. We particularly thank Mr. Hemmer for his argument doing it pro bono. We appreciate this. It always helps us a great deal. Well, thank you, but you're getting paid.
judges: Hawkins, W. Fletcher, Bennett